UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

Case No. 24-cr-20471

v.

JORDAN DAVIS,

Hon. Sean F. Cox
United States District Court Judge

    Defendant.
_____/

**OPINION & ORDER**
**DENYING DEFENDANT'S MOTIONS TO DISMISS INDICTMENT (ECF No. 19) AND**
<u>**SUPPRESS EVIDENCE (ECF No. 18)**</u>

The grand jury in this criminal case indicted Defendant Jordan Davis for possessing a firearm as a felon in violation of 18 U.S.C. § 922(g)(1) after Detroit police stopped him on suspicion of carrying a concealed pistol without a valid license and recovered a pistol from his pocket. Davis argues that his indictment violates his Second Amendment rights, but Davis fails to show that he is not dangerous. Davis also argues that the officers who stopped him violated his Fourth Amendment rights, but those officers reasonably suspected that Davis was violating Michigan law. The Court accordingly shall deny Davis's motions to dismiss his indictment and suppress the evidence recovered by the officers who stopped him.

**BACKGROUND**

Davis's indictment in this case was not his first run-in with the law. Davis was convicted of misdemeanor petit larceny and felony carjacking in 2017. Davis's counsel in this case would later claim that Davis carjacked his girlfriend's uncle after the uncle had behaved inappropriately towards Davis's girlfriend. Davis was also convicted of felony firearm possession as a felon, felony ammunition possession as a felon, and felony possessing a loaded weapon in a vehicle in

1

2023. Davis's counsel in this case would later argue that Davis has only ever possessed a gun for self defense.[1]

Turning to the instant case, Davis's indictment stemmed from an interaction between him and Detroit, Michigan, police officers Aidan Speak and Andrez Botello on August 8, 2024. On that day, Officer Speak was driving a police vehicle on routine patrol in Detroit's Fourth Precinct and his partner, Officer Botello, was in the passenger seat. At approximately 7:30 P.M., the officers pulled into the parking lot of a park on the Detroit River. The officers spotted Davis walking across the lot and saw "an L-shaped imprint" in his right pocket. The officers were approximately fifty-eight feet away from Davis at that point, and they both believed from their training and experience that the bulge in Davis's pocket was a firearm.

Officer Speak then stopped the car, opened the driver's-side door, began to step out of the car, and asked Davis whether he had a valid CPL. Davis was then a few feet away from Speak, and Officer Botello simultaneously got out of the passenger side of the vehicle and began walking around the front of the car towards Davis. Davis did not respond to Speak's question, Speak fully exited the vehicle, and both officers spotted a firearm magazine sticking out of Davis's right pocket. Speak again asked Davis whether he had a valid CPL, and Davis again remained silent. The officers then grabbed Davis, Speak pulled a pistol out of Davis's right pocket, and the officers arrested Davis. Officer Botello also asked Davis whether he had a CPL at some point during this interaction and Davis did not respond, but it is unclear whether Botello asked Davis this question before or after the officers grabbed him.

---

[1] Davis also admitted that his indictment in this case alleges he violated the law while he was on probation for his 2023 gun charges, but the Court does not consider that circumstance here.

2

This prosecution followed, and the grand jury indicted Davis for possessing a firearm as a felon in violation of 18 U.S.C. § 922(g)(1).  Davis now moves to dismiss his indictment under the Second Amendment and to suppress the evidence recovered by Officers Speak and Botello.  Davis's motions were fully briefed, and the Court held an evidentiary hearing on February 19, 2025.  The Government offered testimony from Officers Speak and Botello at that hearing as well as audio-less footage captured by a nearby surveillance camera.[2]  The parties also stipulated that the officers' police vehicle was 16.5 feet long[3] and that Davis's pistol was smaller than the officers' service weapons.

## ANALYSIS

**I.      Motion to Dismiss**

Davis moves to dismiss his § 922(g)(1) indictment under the Second Amendment.  The Second Amendment states that "the right of the people to keep and bear arms[] shall not be infringed," U.S. Const. amend. II, and the Sixth Circuit recently announced in *United States v. Williams* that that this language only permits Congress to disarm dangerous individuals, 113 F.4th 637 (6th Cir. 2024).  Courts accordingly must dismiss felon-in-possession indictments if the defendant "demonstrate[s] that he is not dangerous, and thus falls outside of § 922(g)(1)'s permissible scope." *Williams*, 113 F.4th at 657.  In assessing whether a defendant discharges this burden, "[c]ourts may consider any evidence of past convictions in the record, as well as other judicially noticeable information." *Id.* at 660.

With respect to whether a defendant's prior convictions are probative of dangerousness, convictions for "crimes against the person" are highly probative because they "speak directly to

---

[2] Officers Speak and Botello did not activate their bodycams until after Davis was arrested.
[3] The officers were approximately three-and-a-half car lengths away from Davis when they first spotted him, which comes out to roughly fifty-eight feet considering the approximate length of the officers' vehicle.

3

whether an individual is dangerous." *Id.* at 659. Convictions for other crimes such as "drug trafficking" and "burglary" also "justify a finding of danger" because they "put someone's safety at risk." *Id.* But crimes that "cause no physical harm to another person or the community" such as "mail fraud" and "making false statements" likely "don't make a person dangerous." *Id.*

Here, Davis argues that § 922(g)(1) is facially unconstitutional. But *Williams* explained that § 922(g)(1) "is not susceptible to a facial challenge" because "most applications of [the statute] are constitutional." *Id.* at 657. Davis concedes as much but maintains that he can challenge § 922(g)(1) on its face in any event because *Williams*'s test for as-applied challenges to § 922(g)(1) is unworkably vague. But as this Court has explained in the past, it "has no authority to 'ignore . . . the hierarchy of the federal court system created by the Constitution and Congress,'" and therefore it must "apply *Williams*." *United States v. Johnson*, No. 24-cr-20310, 2024 WL 5078100, at *2 (E.D. Mich. Dec. 11, 2024) (alteration in original) (quoting *Hutto v. Davis*, 454 U.S. 370, 374–75 (1982)).

Davis argues in the alternative that he is not dangerous under *Williams*. Davis has a long road to hoe because he was convicted of petit larceny and carjacking in 2017, and he concedes that carjacking is a crime against the person. Per *Williams*, convictions for crimes against the person "might indicate an irrebuttable presumption of dangerousness," and in any event the burden on a defendant with such convictions to show he is not dangerous "would be extremely heavy." *Williams*, 113 F.4th at 658. Davis also admits that he was convicted of three gun felonies in 2023, and convictions for felonies whose commission "involved a firearm" are probative of dangerousness under *Williams*. *United States v. Morton*, 123 F.4th 492, 500 (6th Cir. 2024).

4

At the evidentiary hearing, Davis's counsel maintained that his carjacking conviction does not show that Davis is dangerousness because Davis carjacked his girlfriend's uncle after the uncle had acted inappropriately towards Davis's girlfriend. Davis's counsel also argued that Davis's gun convictions were not probative of his dangerousness because those convictions stemmed from Davis's possession of a gun for self defense. The Court disagrees. For one thing, Davis offered only bare statements of counsel to prove the circumstances underlying his carjacking and gun convictions. For another, even if Davis broke the law because he believed he needed to protect himself or others, such belief does nothing to show that Davis is not dangerous given that he was convicted for such conduct.

In sum, Davis fails to show that he cannot be lawfully disarmed.

**II.  Motion to Suppress**

Davis moves to suppress the evidence recovered by Officers Speak and Botello during his August 8, 2024, arrest and the interaction that preceded it. As relevant here, the exclusionary rule requires courts to suppress evidence gathered from searches and seizures that violated the Fourth Amendment. *See United States v. Kennedy*, 61 F.3d 494, 497 (6th Cir. 1994). In the Fourth Amendment context, courts generally recognize three kinds of encounters between citizens and law enforcement: "(1) the consensual encounter, which may be initiated without any objective level of suspicion"; (2) "the investigative detention, which, if non-consensual, must be supported by a reasonable, articulable suspicion of criminal activity"; and (3) "the arrest, valid only if supported by probable cause." *United States v. Avery*, 137 F.3d 343, 352 (6th Cir. 1999).

Davis argues that his interaction with the officers did not comport with these standards for three reasons. *First*, Davis argues that his interaction with the officers was an investigatory

5

stop from the moment of its inception,[4] and therefore that the officers required at least reasonable suspicion from the outset. The Court disagrees. Officer Speak stopped the officers' police vehicle near Davis, opened the driver's side door, partially stepped out of the vehicle, and asked Davis whether he had a valid CPL. Speak then fully exited the vehicle, stepped closer to Davis as Officer Botello walked around the front of the police vehicle, and again asked Davis whether he had a valid CPL. Nothing about this interaction suggests that it was nonconsensual before the officers grabbed Davis.

*Second*, Davis argues that the officers could not have believed he had a gun in his pocket given the distance between him and the officers when they first spotted him. But both officers testified that they saw an L-shaped bulge in Davis's pocket that they recognized was a gun based on their training and experience. The officers also both testified that they saw that gun sticking out of Davis's pocket when they approached him. And the officers perceived both these things before their interaction with Davis ripened into an investigatory stop (*i.e.*, before the officers grabbed Davis and searched him for a weapon). Thus, the officers reasonably suspected that Davis had a gun before they seized him.

*Third* and last, Davis argues that even if the officers reasonably suspected that he had a gun before they seized him, they did not reasonably suspect that he had committed a crime because Michigan law permits individuals to carry a concealed pistol unless an individual lacks a valid CPL. By way of background, Michigan law states that "[a] person shall not carry a pistol concealed on or about his or her person . . . except in his or her dwelling house, place of business, or on other land possessed by the person, without a license to carry the pistol as

---

[4] Davis does not argue that the officers arrested him before they spotted a gun magazine sticking out of his pocket.

provided by law." Mich. Comp. Laws Ann. § 750.227(2) (West 2005). Here, the officers reasonably suspected that Davis was violating this statute when the officers saw a bulge in Davis's pocket that they believed was a gun based on training and experience, saw a gun sticking out of Davis's pocket when they approached him, and watched Davis remain silent when he was asked whether he had a valid CPL.

Davis disagrees and points to *Northrup v. City of Toledo Police Department*, where the Sixth Circuit held that an Ohio police officer did not reasonably detain a plaintiff whom the officer had seen openly carrying a firearm. 785 F.3d 1128 (6th Cir. 2015). That ruling made sense because "Ohio law permits the open carry of firearms." *Id.* at 1131. So too here, argues Davis: The officers could not have lawfully detained him unless and until they reasonably suspected that he was carrying a concealed pistol without a valid CPL.[5] This argument relies on Davis's conclusion that his interaction with the officers was nonconsensual from its inception, but the officers only stopped Davis after they reasonably suspected that he was violating Michigan law.

At bottom, the officers did not violate Davis's Fourth Amendment rights.

## CONCLUSION & ORDER

Davis's indictment for violating § 922(g)(1) did not violate his rights under the Second Amendment and his interaction with Detroit police on August 8, 2024, did not violate his rights under the Fourth. Accordingly, **IT IS ORDERED** that Davis's motions to dismiss his indictment (ECF No. 19) and suppress evidence (ECF No. 18) are **DENIED**.

---

[5] Davis does not argue that the scope of the officers' stop was unlawful.

**IT IS SO ORDERED.**

                                              s/Sean F. Cox
                                              Sean F. Cox
                                              United States District Judge

Dated:  March 6, 2025